# CHARLESTON

## CITY OF ELKINS v. DONOHOE.

Submitted March 10, 1914.    Decided May 12, 1914.

1. DEDICATION—*Streets and Alleys.*

   Where an owner causes land to be surveyed and platted into blocks and lots, with avenues, streets and alleys, and sells and conveys lots by numbers and street location as designated on the map thereof duly recorded, he thereby dedicates such avenues, streets and alleys to public use.   (p. 337).

2. ESTOPPEL BY DEED—*Matter Precluded—Dedication.*

   A purchaser of a lot designated in his deed by number, street boundaries and distances, according to such map, is estopped to deny dedication of streets and avenues adjacent thereto.   (p. 338).

3. MUNICIPAL CORPORATIONS—*Encroachment on Streets—Injunction—Existence of Other Remedies.*

   While a city may by charter declare and abate as nuisances encroachments on its public ways, equity will not, for that reason alone, deny relief by injunction.   (p. 336).

4. ADVERSE POSSESSION—*Public Property—Streets.*

   However long continued, encroachments on a public street will not confer title, by adverse possession, to any part of the thoroughfare.   (p. 339).

Appeal from Circuit Court, Randolph County.

Suit by City of Elkins against P. J. Donohoe, Bishop, etc. From a decree for plaintiff, defendant appeals.

*Affirmed.*

*C. H. Scott* and *Jas. A. Bent,* for appellant.

*R. H. Allen,* for appellee.

LYNCH, JUDGE:

The right of the City of Elkins to maintain a suit to enjoin and abate, as a nuisance, a fence enclosing a portion of one

of its principal streets and the projection of an out-house beyond the street line, is challenged by demurrer.

Because the city has by charter plenary power to control its streets and alleys, to keep them clean and free from obstruction, to declare and abate nuisances thereon, and for this purpose to pass and enforce all necessary ordinances and resolutions, it is argued, the city can not invoke the aid of a court of equity to supplement the authority thus conferred. As thus broadly stated, the proposition is untenable. This court, in *Moundsville* v. *Railroad Co.*, 37 W. Va. 92, held to the contrary. "Notwithstanding legal remedies for a public nuisance, equity will interfere by injunction, in a proper case, where the nuisance is of a permanent character": 2 Beach, Mod. Eq. Jur., § 743.

Jurisdiction passed unchallenged in *Wheeling* v. *Campbell*, 12 W. Va. 36, and *Teass* v. *St. Albans*, 38 W. Va. 1. Judge HOLT in the latter case said: "The remedy by injunction is now more usual than any other, and, by reason of its great flexibility, unlimited variety of form, and power of adaptation to the exigencies of the particular case, is much more convenient and effective. Nor can I see any good reason why it may not be resorted to by a municipal corporation, where judicial proceedings are proper or necessary". He made the same observations in *Davis* v. *Davis*, 40 W. Va. 462, saying it had become a common judicial remedy for the abatement of nuisances. In *Ralston* v. *Weston*, 46 W. Va. 544, though reversing the decree enjoining abatement proceedings by the municipality, the court remanded the cause with direction to dissolve the injunction granted plaintiff and to award a mandatory injunction requiring him to abate the nuisance and restore to the town the ground occupied by him. See also *Weston* v. *Ralston*, 48 W. Va. 170; *State* v. *Ehrlick*, 65 W. Va. 700. Again, "obstruction of a public street by an individual is a public nuisance, and "an injunction may be maintained to stop or abate it" by the municipality or by an abutting owner who is materially injured. *Pence* v. *Bryant*, 54 W. Va. 263; 2 Dillon on Mun. Corp. 1043; 3 Id. §§ 1130, 1131; 3 McQuillin on Mun. Corp. §§ 904, 926, 1371; 4 Id. § 2505; 2 Elliott on Roads and Streets § 849; *Bath Co.* v. *Brewery Co.*, 151 Mich. 555. "The corporate authorities of a

town are proper parties to enjoin a nuisance. Thus, the erection of buildings upon a public square which has been dedicated as such to the use of the inhabitants of the town, constitutes a nuisance, which may be enjoined by the corporate authorities''. High on Inj., §§755, 756; *Chicago* v. *Railway Co.*, 96 Ill. 620; *Jacksonville* v. *Railway Co.*, 67 Ill. 540; *Llano* v. *Llano*, 23 S. W. (Tex.) 1008. A mandatory injunction affords proper relief against obstruction of a way devoted to public or private use. *Hershman* v. *Stafford*, 58 W. Va. 459; *Flaherty* v. *Fleming*, 58 W. Va. 669; *Johnson* v. *Gould*, 60 W. Va. 84; *Bent* v. *Trimboli*, 61 W. Va. 559.

The remedy by abatement of the obstruction under municipal charter is not exclusive, but consistent with relief by injunction. The latter is merely cumulative. 28 Cyc. 899; 37 Cyc. 253; Joyce on Inj. §1048; 2 Dillon on Mun. Corp. 1043; 3 McQuillin on Mun. Corp. §§926, 904; *Watertown* v. *Cowen*, 4 Paige 510. "It is now well settled that, in addition to the purely legal remedies which may be resorted to in such cases, courts of equity will take jurisdiction of public nuisances, and, in proper cases, afford relief by injunction, especially where the nuisance threatened or committed is of a nature to be permanent or continuous". *Stearns* v. *Railroad Co.*, 36 Minn. 425; *Reed* v. *Birmingham*, 92 Ala. 339; *Demopolis* v. *Webb*, 87 Ala. 659; *San Francisco* v. *Buckman*, 111 Cal. 25.

The bill avers right in the city by dedication, by the original owner, of the street encroached upon by defendant, and prays a mandatory injunction, as properly it may under the authorities cited. What are the facts?

Prior to 1889, Henry G. Davis owned the land on the western side of the Beverley and Fairmont turnpike, that being the side on which the city of Elkins is in the main located. For the purpose of establishing a town, he caused a survey of the land to be made in blocks, lots, avenues, streets and alleys, and a map thereof, showing the subdivisions, to be recorded in the proper office in Randolph county. He sold and conveyed the lots with reference to their numbers and street location as they appear on the map. He testifies to the dedication of a strip along the pike sufficient to increase its width to 60 feet. Nowhere is the dedication denied except

by answer; and defendant did not offer any evidence for any purpose.

While, with the exception of Randolph avenue (formerly the Beverley and Fairmont turnpike), the streets and avenues cross each other at right angles, they intersect Randolph avenue at oblique angles, and, so far as appears, they do not extend beyond it. Thus, the lots abutting thereon are right-angled triangular lots, each having a portion of the avenue as its hypotenuse. One of the triangular lots Davis conveyed to Dunbrack in 1889, a part of which Donohoe now owns. The deed describes the lot as situate in the town of Elkins, "designated as a triangle in block 42 on the plat of said town, now referred to as a part thereof, which is duly recorded in the office of the clerk of the county court of Randolph county in deed book Q at page 119, beginning at a point on the Beverly and Fairmont pike at the intersection of the east side of Henry street with said pike, thence along said street 300 feet to the northeast intersection of Henry and Third streets, thence with Third street 264 feet to a point in edge of pike adjunction with John street, thence along said pike 400 feet to the beginning, containing 39,600 square feet".

Notwithstanding the dedication to the city, Donohoe insists that, as the first and third corners of the Dunbrack lot are located on the turnpike, his lot extends to the eastern edge thereof, assuming its width to be 40 feet. This position is untenable; first and principally, because he is estopped to deny the dedication. The authorities uniformly so hold. See 1 Elliott on Roads and Streets §§128-132; 3 Dillon on Mun. Corp. §1083; *Cook* v. *Totten,* 49 W. Va. 177; *Ralston* v. *Weston,* 46 W. Va. 544; *McClelland* v. *Weston,* 49 W. Va. 669; *Hast* v. *Railroad Co.,* 52 W. Va. 396; *Pence* v. *Bryant,* 54 W. Va. 263; *Edwards* v. *Land Co.,* 56 W. Va. 43; *Demopolis* v. *Webb,* 87 Ala. 659; *Wisby* v. *Bonte,* 19 Ohio 238.

But defendant's position is untenable for another reason. After the width of the turnpike was increased to 60 feet, it was designated and referred to as the Beverley and Fairmont turnpike, but subsequently as Davis avenue, and later still as Randolph avenue, and it thus appears on the map filed in the cause. The proof justifies the assumption that the first and third calls of the Dunbrack deed are located at the eastern

edge of the turnpike after its width had been increased to 60 feet, and not while it remained 40 feet wide as contended for by defendant. The survey made by Crickard in the suit supports and confirms this view. He began at the intersection of Henry avenue (in the deed called "street") and Third street, which is the second corner mentioned in the Dunbrack deed. This corner he identified from the location of old buildings there and along Third street between Henry and Randolph avenues, and from equally old buildings at other street corners understood and accepted as demarking and delimiting street and property boundaries. With this corner thus identified, he ascertained the location of the corners of the triangle conveyed to Dunbrack, and the distances between the three corners. His measurements agree with the distances in the deed, except that on Randolph avenue, which as he found it is 399.6 instead of 400 feet. The area of course is the same in both. Of that no question can arise. The fact is obvious.

It does not appear, nor is it material, when the purprestures first occurred, or how long they have remained; as, under the more recent rulings of this court, the statute of limitations will not operate to perfect title to any part of a public thoroughfare. *Ralston* v. *Weston*, 46 W. Va. 544; *McClelland* v. *Weston*, 49 W. Va. 678; *Foley* v. *County Court*, 54 W. Va. 30. In so far as they project or are located beyond the green colored line on the Crickard survey, they are encroachments on Randolph avenue, and, as such, abatable as nuisances.

Finding no error, we affirm the decree from which defendant has appealed.

*Affirmed.*